## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO, DIVISION

| | |
|---|---|
| ESTATE OF AMELIA H. MACIAS HEIRS, WALTER MACIAS, STEVEN MACIAS, YVONNE SHILLING, INDIVIDUALLY AND AS A REPRESENTATIVE OF THE ESTATE OF AMELIA H. MACIAS, PLAINTIFFS § § § § § § § § V. § § STATE OF TEXAS, VERONICA GIDEON, MICHAEL J. SMITH, CODY MITCHELL, ELIAS ESCALON, CHAD MATLOCK, NATHAN MUTZ, BRENT BARINA, JASON BOBO, JOSEPH EVANS, DREW PILKINGTON, STEVEN C. MCCRAW, HENRY L. WHITMAN JR., CRYSTALYNN NICHOLE CORNEVIN, AND BRANDI WEIMER, DEFENDANTS. § § § § § § § § § § § § § § § | CIVIL ACTION NO-5:20-cv-00460-RG JURY DEMANDED |

## FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE JUDGE ELIZABETH S. CHESTNEY:

Plaintiffs, Estate of Amelia H. Macias, Walter Mais, Steven Macias, bring this their First Amended Complaint against the State of Texas (Department Public Safety ["DPS"], and Department of Family and Protective Services ["DFPS"]) Veronica Gideon, Michael J. Smith, Cody Mitchell, Elias Escalon, Chad Matlock, Nathan Mutz,

1

Brent Barina, Jason Bobo, Joseph Evans, Drew Pilkington, Steven C. McCraw, Henry L. Whitman Jr., Crystalynn Nichole Cornevin, Brandi Weimer, individually, in response to the pending Motion to Dismiss and would respectfully show as follows:

### I. INTRODUCTION

1. In 2017, State of Texas's Department of Family and Protective Services ("DFPS" and "APS" herein) received many calls concerning the safety of Amelia Macias ("Amelia") from her mentally ill son and caregiver, Fernando Macias, Jr. ("Fernando"). These calls reported that Fernando was talking about the apocalypse and how there is a government conspiracy. These calls also reported that Fernando was not taking his medication.

2. These calls to APS which were not returned for months.

3. On March 6, 2018, officers with the Bexar County Mental Health Unit ("MHU") responded to the Macias residence. The County's Mental Health Unit's objective was to serve an Order of Protective Custody mental health warrant against Fernando.

4. Fernando, suffering from severe mental illness for over 40 years, delusions of an alien invasion, and apocalypse, was unaware of the law enforcement's presence.

5. MHU officers entered Fernando's home, and the distressed Fernando opened fire on the individuals that entered his home.

6. Bexar County Sheriff's special weapons and tactics team ("SWAT") responded and decided to negotiate with Fernando because they were aware of the elderly Amelia's presence. Amelia was wearing red clothes.

7. Based on the many calls to APS, the agency was fully aware that Fernando was mentally unstable and the caregiver of Amelia.

8. On March 7, 2018, the State of Texas's Department of Public Safety ("DPS") Texas Rangers Division SWAT (the "Texas Ranger SWAT") relieved the Bexar County Sheriff's deputies SWAT team who were outside of Fernando's house for several hours.

9. Ignoring protocols, the Texas Ranger SWAT decided to make entry into the home via drones to determine the location of Fernando and Amelia.

10. They ignored the fact that Amelia was the only person in the home wearing red.

11. DPS SWAT improperly concluded that Fernando was wearing a red shirt and targeted the red shirt.

12. Without properly assessing the scene, threat, or circumstances, DPS SWAT killed Amelia as a result of their lack of patience and mental health training as well as by their failure to follow proper protocols.

## II. Parties

13. Estate of Amelia H. Macias, P.O. Box 27353, Houston, TX 77227.

14. Walter Macias, P.O. Box 27353, Houston, TX 77227.

15. Steven Macias, P.O. Box 27353, Houston, TX 77227.

16.     Yvonne Shilling, individually and as a representative of the Estate of Amelia H. Macias.

17.     Steven C. McCraw Director of Texas Department of Public Safety may be served wherever he may be found.

18.     Veronica Gideon, Texas DPS Officer, individually, who may be served wherever she may be found.

19.     State of Texas may be served wherever the director may be found

20.     Michael J. Smith, Texas DPS Officer, individually, who may be served wherever he may be found.

21.     Cody Mitchell, Texas DPS Officer, individually, who may be served wherever he may be found.

22.     Elias Escalon, Texas DPS Officer, individually, who may be served wherever he may be found.

23.     Chad Matlock, Texas DPS Officer, individually, who may be served wherever he may be found.

24.     Nathan Mutz, Texas DPS Officer, individually, who may be served wherever he may be found.

25.     Brent Barina, Texas DPS Officer, individually, who may be served wherever he may be found.

26.     Jason Bobo, Texas DPS Officer, individually, who may be served wherever he may be found.

27.     Joseph Evans, Texas DPS Officer, individually, who may be served wherever he may be found.

28.     Drew Pilkington, Texas DPS Officer, individually, who may be served wherever he may be found.

29.     Henry L. "Hank" Whitman Jr. Commissioner of the Department of Family and Protective Services (DFPS), individually, who may be served wherever he may be found.

30.     Crystalynn Nichole Cornevin, Adult Protective Services agent, individually, who may be served wherever she may be found.

31.     Brandi Weimer, Adult Protective Services agent, individually, who may be served wherever she may be found.

## IV.     JURISDICTION AND VENUE

32.     This Court has jurisdiction over Plaintiffs' state and federal claims, under 28 U.S.C. sections 1331 and 2201, 42 U.S.C sections 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction.

33.     Venue is proper in this Court under 28 U.S.C. section 1391(b) because the incidents at issue occurred in Bexar County, Texas.

### III.   ADDITIONAL FACTS

34. On March 6, 2018, at approximately 5:00 PM, Amelia and Fernando were at their home.

35. Bexar County MHU officers traveled to the Macias home located at 9230 Saddle Trail in San Antonio to execute a mental health warrant issued for Fernando.

36. MHU officers entered the residence. Fernando began firing his weapon in an effort to protect himself and mother. The officers retreated.

37. Bexar County SWAT ("BCSO SWAT") was called for assistance while MHU officers secured the perimeter of the Macias home.

38. Once BCSO SWAT was on the scene, negotiators made numerous attempts to communicate with Fernando, but were unsuccessful.

39. At this point, officers presumed that Fernando was possibly holding his mother as a hostage.

40. BCSO SWAT entered the Macias home and secured the lower section of the two-story residence.

41. Believing he and his mother were under attack, Fernando opened fire again, striking two officers who entered the second floor of their home.

42. BCSO SWAT officers retreated from the Macias home.

43. Fernando appeared to intentionally shoot at propane tanks strategically placed inside the residence by the officers, but was unsuccessful in causing a detonation.

44. BCSO SWAT secured the perimeter and continued attempts to wait Fernando out over the next approximately 15 hours.

45. The next morning, on March 7, 2018, at approximately 3:00 PM, DPS SWAT arrived on the scene.

46. BCSO requested DPS SWAT assist and relieve BCSO SWAT officers, Veronica Gideon, Michael J. Smith, Cody Mitchell, Elias Escalon, Chad Matlock, Nathan Mutz, Brent Barina, Jason Bobo, Joseph Evans, and Drew Pilkington.

47. Once DPS SWAT officers arrived on the scene they introduced "diversionary devices" into the second floor of the residence where Fernando was last observed.

48. The diversionary devices released through second-floor windows increased visibility into the residence, providing information and the location of Fernando and Amelia.

49. At this point, Fernando had not been heard from or observed in approximately 15 hours.

50. DPS SWAT officers identified and announced the suspect firing at them from the second-floor window was wearing a red shirt, although it was without dispute that Amelia was the only one wearing red in the home.

51. Gunfire was exchanged but nobody was hurt or hit.

52. DPS SWAT operators sent an unmanned aerial system camera-equipped drone into the residence.

53. Amelia was lying on the floor near the second-floor window.

54. DPS SWAT officers, Veronica Gideon, Michael J. Smith, Cody Mitchell, Elias Escalon, Chad Matlock, Nathan Mutz, Brent Barina, Jason Bobo, Joseph Evans, and Drew Pilkington deliberately shot into the residence striking the unarmed Amelia multiple times. Amelia was pronounced dead later early that evening.

55. Fernando was also located on the second floor. He also sustained multiple gunshot wounds from the DPS SWAT officers.

56. Fernando was arrested and taken into custody.

## V. CLAIMS FOR RELIEF

### Claim 1: 42 U.S.C. § 1983 Fourth and Fourteenth Amendment Violations

57. Plaintiffs incorporate by reference all preceding paragraphs of this Original Petition as if set forth at length herein in this section.

58. This suit is brought pursuant to 42 U.S.C. section 1983, which is entitled the Civil Rights Act. The critical language of the Civil Rights Act sets forth, in part:

> *"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Fourteenth and Fourth Amendments: Due Process, Unlawful Search, Seizure, and Detention.*

59. Defendants deliberately shot into the Macias residence. Amelia was struck by bullets multiple times, immediately killing her. Defendants were aware that Amelia was unarmed and posed no threat.

60. Furthermore, defendants deprived Amelia of her right to life by engaging in the actions stated herein.

### Claim 2: Failure to Train

61. DPS Director Steven C. McCraw failed to train the individual officers under his supervision on the proper means of extracting barricaded subjects, hostage situations, de-escalation techniques and procedures of managing subjects suffering from mental illness.

62. APS Associate Commissioner and Director of Field Operations Kezeli "Kez" Wold alongside Commissioner Henry L. "Hank" Whitman Jr. failed to train his managers, specialists, and other employees in keeping regular contact with their clients to ensure their safety. Wold failed to train his managers, specialists, and other employees in processing and investigating calls of abuse, neglect, or the general safety of vulnerable adults, including Amelia. APS received several calls concerning the safety of Amelia, which were not returned for months.

### Claim 3: Failure to Supervise

63. Fourth, and Fourteenth Amendments. DPS director Steven. C McCraw failed to supervise the individual officers under his command. As Director of DPS all deputies,

regional or otherwise must report directly to Director Steve McCraw. Director Steve McCraw failed to properly supervise his subordinates in the proper means of assisting local law enforcement and to supervise his subordinates in critical situations which led to the death of the 84-year-old Amelia Macias.

64. APS Associate Commissioner Wold and Commissioner Whitman failed to supervise their managers and employees, specifically Crystalynn Nichole Cornevin (Caseworker) and Brandi Weimer (Supervisor to Caseworker). The lack of supervision resulted in the failure of defendants to keep in regular contact with their clients to ensure their safety. Such lack of supervision allowed defendants to ignore pleas from the plaintiff to help the 84-year-old Amelia Macias.

## Claim 4: Wrongful Death Statute

65. Plaintiffs incorporate by reference all preceding paragraphs of this Original Complaint as if set forth at length herein in this section.

66. Plaintiffs file this wrongful death action against defendants, pursuant to the Texas Wrongful Death Statute and assert that Amelia Macias's death was a result of the defendants' acts and omissions.

67. Amelia H. Macias was unmarried and was survived by her children, Stephen Macias, Walter Macias, Yvonne Shilling, and Fernando Macias.

68. DPS SWAT officers listed above were aware of the foreseeable risk of further agitating the delicate situation of an armed man with a history of mental illness and

weapons barricaded in a home. They also knew that there was a high probability that an innocent party may be harmed by any crossfire. They nonetheless proceeded to force their way into the home and engage in a gunfight with Fernando Macias, fatally shooting Amelia Macias.

69.    From February 5th, 2018 through March 5th, 2018 Walter Macias placed five calls to APS with concerns regarding the health and safety of 84-year-old Amelia Macias. All of the calls were ignored.

70.    APS was aware that Amelia's caregiver Fernando had a long history of mental illness and failing health. Although APS was aware that Fernando was unfit to be caregiver, APS ignored pleas by the rest of Amelia's family for help.

### Claim 5: Survival Claim

71.     Plaintiffs incorporate by reference all preceding paragraphs of this Original Complaint as if set forth at length herein in this section.

72.    Plaintiffs, as heirs of the Estate of Amelia H. Macias file this survivor action against defendants, pursuant to the Texas Survivorship Statute and assert claims that Amelia Macias would have been able to bring on her own behalf had she survived that were a result of the Defendants joint and several acts and omissions.

### Claim 6: Negligence

73.    In the alternative to the constitutional claims, Plaintiffs brings claims for negligence against State of Texas (APS and DPS)

74. State of Texas-(APS) had a duty of reasonable care to investigate the abuse and neglect of Amelia Macias. The family of Amelia Macias called to report the unstable situation that Ms. Macias was currently in. However, those calls remained unanswered for months.

75. Ms. Macias's family made clear through messages sent to APS, that Fernando Macias was unstable, suffering from mental illness.

76. APS negligently ignored calls and messages for help from the family of the elderly Ms. Macias.

77. APS acts and omissions caused the death of Ms. Macias.

78. State of Texas-(DPS) had a duty of reasonable care to protect Ms. Macias from harm or potential harm when an attempt was made to detain Fernando.

79. Ms. Macias was unarmed and posed no threat to the responding DPS officers. The officers failed to protect and properly identify Ms. Macias.

80. Ms. Macias suffered mental anguish fearing for her life and the life of her sonin the moments leading up to her death, after the DPA Agents, Veronica Gideon, Michael J. Smith, Cody Mitchell, Elias Escalon, Chad Matlock, Nathan Mutz, Brent Barina, Jason Bobo, Joseph Evans, and Drew Pilkington, began recklessly firing into her home and ultimately striking her.

81. DPS officers negligently fired into the house causing the death of Ms. Macias. DPS negligence of not protecting and identifying Ms. Macias' location in the home during the assault was a cause of Ms. Macias' death.

82. The negligent use of state tangible property, namely guns and bullets, fired by its agents, Veronica Gideon, Michael J. Smith, Cody Mitchell, Elias Escalon, Chad Matlock, Nathan Mutz, Brent Barina, Jason Bobo, Joseph Evans, and Drew Pilkington, caused the death of Ms. Macias

### Claim 7: Negligence Gross

83. In the alternative to the constitutional claims, Plaintiffs bring claims for gross negligence against APS and DPS.

84. State of Texas-(APS) consciously, recklessly and voluntarily without reason disregarded their duty of reasonable care toward Ms. Macias.

85. The family of Ms. Macias attempted to contact APS defendants through messages and phone calls. However, the family went months without an answer or a proper investigation.

86. APS defendants gross negligence of failing to conduct a proper investigation, communicate with the Macias family and respond to calls and messages caused the death of Ms. Macias.

87.  State of Texas-(DPS) consciously, recklessly and voluntarily without reason disregarded their duty of care to protect the unarmed and non-threatening Ms. Amelia Macias.

88.  DPS officers began an assault on the home of Ms. Macias. With knowledge of Ms. Macias in the house, DPS officers, Veronica Gideon, Michael J. Smith, Cody Mitchell, Elias Escalon, Chad Matlock, Nathan Mutz, Brent Barina, Jason Bobo, Joseph Evans, and Drew Pilkington, recklessly and indiscriminately fired shots into the home, killing Ms. Macias.

89.  DPS officers' gross negligence caused the death of Ms. Macias.

## VI.  DAMAGES

90.  Plaintiffs incorporate by reference all preceding paragraphs of this Original Complaint as if set forth at length herein in this section.

91.  Plaintiffs experienced, and in all likelihood will experience, at least great pain and suffering in the past and in the future, great mental anguish in the past and future, loss of enjoyment of Amelia Macias's life, loss of consortium, loss of financial support and household services, comfort, and love and society.

92.  Plaintiffs seek exemplary damages. Plaintiffs also bring claims for violations of Amelia Macias's Fourth, and Fourteenth Amendment rights.

93.  Plaintiffs have been damaged by the loss of companionship, consortium, and support that would have been provided by Amelia Macias but for his preventable death.

94. Amelia Macias suffered great mental anguish and pain in the minutes and hours before her death and such is actionable through her estate and funeral expenses are recoverable as well.

95. Award exemplary damages to Plaintiffs. All individuals, excluding the county, sued are liable for punitive damages as they were deliberately indifferent to Amelia Macias's constitutional rights and he did the acts knowingly, such acts, including recklessly shooting Amelia Macias.

96. These acts are extreme and outrageous and shocking to the conscious.

## VII. Attorneys' Fees

After prevailing herein, Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs to enforce Amelia Macias's constitutional rights under 42 U.S.C. sections 1983 and 1988 from Defendants.

## VIII. Prayer for Relief

For the reasons set forth herein, Plaintiffs respectfully request that the Defendants, be cited to appear and answer herein and that Plaintiffs have a final judgment against the Defendants, jointly and severally, for actual damages above the jurisdictional minimum of the Court, compensatory damages above the jurisdictional minimum of the Court, nominal damages above the jurisdictional minimum of the Court, mental anguish, exemplary damages as allowed by law, pre-judgment and post-judgment interest, costs of court, attorneys' fees and expenses, and all other relief to which the Plaintiff is justly

entitled, at law or in equity. Plaintiffs also request this Court to enter a permanent injunction to prevent future violations of the Fourth, and Fourteenth Amendments for the claims asserted herein. Plaintiffs also request the authorization to conduct post-judgment discovery to ensure that Defendants are in compliance with a permanent injunction.

        Respectfully submitted,

By: /s/ U.A. Lewis\_\_\_\_
The Lewis Law Group
U.A. Lewis
SBN: 24076511
FBN: 1645666
P.O. Box 27353
Houston, TX 77227
Phone: (713) 570-6555
Fax: (713) 581-1017
MyAttorneyAtLaw@gmail.com
Attorney for the Plaintiffs

## CERTIFICATE OF SERVICE

    I certify that on May 4, 2020, I filed a true and correct copy of the foregoing Amended Complaint on the Court's CM/ECF system serving all parties' counsel of record.

/s/ U.A. Lewis
U.A. Lewis